This is our first case of the afternoon. People of the State of Illinois v. Joshua Mefford. For the appellant, Ms. Levy. Ms. Levy. And for the appellee, Ms. Shepard. You may proceed. Good afternoon, Your Honors. Rebecca Levy from the Office of the State Appellate Defender, arguing on behalf of defendant Joshua Mefford. Mr. Mefford's primary and best defense in this case was convincing the jury that he acted recklessly rather than knowingly, or that he disregarded a substantial risk of great bodily harm and was not practically certain that his actions would result in that great bodily harm. We maintain that the evidence presented in the trial established that he acted recklessly rather than knowingly. So we have to second guess the jury's verdict? We maintain that that's what the evidence showed, and we are asking this court to reduce his conviction to involuntary manslaughter, but I was going to focus my argument today on how defense counsel was ineffective when he failed to keep the jury from hearing prejudicial and inadmissible other crimes, such as comments about punishment, and where he failed to make sure that the jury had the tools that it needed to adequately evaluate Mefford's mental state. Counsel's inactions were each unreasonable and prejudicial on their own, but especially combined, they served to prohibit the jury from convicting Mefford of involuntary manslaughter instead of murder. As I just mentioned, first, counsel was ineffective where he failed to object to the jury hearing these prejudicial other crimes comments and prejudicial comments about punishment. The jury learned from Mefford's own statement to the police, which was videotaped, just paraphrasing a little, but that he kept doing dumb stuff like this, that he was on probation for the dumb stuff that he kept doing, and that he had just gotten out of jail for this. Other crimes evidence is problematic because it can lead the jury to convict the defendant based on his own disposition or propensity to commit crime rather than the evidence before it, and that's especially true when other crimes evidence are similar to the offenses for which the defendant is on trial. And here, Mefford was harmed by these statements that he made for several reasons. At the very least, his comments implied that he had either punched someone or robbed someone previously. And the jury didn't only hear the comments one time during his statement. They heard one of the comments when Detective Clark testified prior to the video being shown to the jury. He testified that Mefford had told him that he kept doing dumb stuff like this. And then all three of the comments were emphasized by the state and closing argument, both in open closing and in rebuttal, and especially in rebuttal closing. The prosecutor quoted Mefford's statement on the video and said, he was quoting him, I'm on probation for the dumb stuff. I should have just, you know, I just got out of jail for this. I should have learned to walk away. And then the prosecutor said, 9-9-12 was on his hands. Prior incarceration were not. Usually when other crimes evidence is admitted at trial, it's admitted for a particular limited purpose, and the jury is instructed as to that particular limited purpose. And that didn't happen here because the defense counsel didn't challenge the admission of any of the comments. So the jury was left free to consider all the comments as propensity evidence, or to convict Mefford because he was, they thought he was a bad person who deserved punishment in general. And the jury also heard Mefford's own musings about what sentence he thought he would serve for murder and robbery. And Mefford said that he thought that he would serve five to six years if he were convicted of murder and robbery. And comments about punishment are improper because the jury's specific base is for evidence without regard to the consequences of the verdict. Would we have to overrule the Patterson case to agree with your argument? I think Patterson is significantly distinguishable because there the jury received the limiting instruction about what, for the purpose they were supposed to consider the evidence. They received, I think, I think they were instructed three or four times about what they were supposed to consider the evidence for. Here there's no instruction. The jury's free to just consider it however they choose. Let's suppose that none of this evidence came in, or very little of it came in. Some of what he said would support a notion of recklessness. I mean, you know, I do dumb stuff like this. I mean, that dumb stuff is, I punched a guy. You know, I'm always getting in trouble for dumb stuff like that. But let's take that out. Could any reasonable fact finder believe that he struck the victim once? Based on the evidence at trial? I think that jury could have believed that based on evidence of his statement, but also what the witness who had passed away observed. He also saw the defendant strike the victim one time. Where did all the other injuries come from? The medical examiner did testify that one of them was from him falling and hitting his head on the pavement. Did you see the autopsy report? Yes, I did. This is a guy who was beaten badly. If it was one punch from the defendant, where is the missing guy who inflicted all the others? We can see that Matthew punched the victim, and his punching him killed Matthew. The question the Justice is going to ask you is, was it one punch? And you said the jury could believe it was one. That's inconsistent with the photograph of what he looked like. He was clearly beaten multiple times, struck multiple blows. If it wasn't your client, who was it? I'm not saying that it wasn't Matthew who hit him, but a medical examiner's testimony was that he was struck six times by blunt force trauma consistent with the facts. It doesn't necessarily mean all of them were from this. It could have occurred from some other force hitting him. There's a mystery assailant? No, I don't think there's a mystery assailant, but he could have fallen after being hit. Or some other... got an injury a different way. How do you get an injury? There needs to be a theory in that, I think. Well, he did fall and hit his head on the pavement. Right. And then he got up and walked away. So there's a time span of hours where he could have fallen again. I'm not going to speculate on what happened to him, but the jury did hear evidence that he had been punched once or twice from the defendant, from the person who testified who had shared a prison cell with him, and from the witness who observed at least part of the altercation between the two. Does the statement come in about, I'm pretty good with my hands and I only hit him once and I've had fights before? That didn't come in. That came in, but should that have come in? Because if that comes in, that is directly contradictory to the injuries received. We haven't challenged that statement as an admissible. We've challenged his comments about having committed other crimes before and being on probation and having just gotten out of jail. The defense counsel was also ineffective when he failed to close an argument why Musbert was guilty of involuntary manslaughter instead of murder. Musbert requested and received the involuntary manslaughter instruction, and that made his mental state a critical issue of fact for the jury to decide. But defense counsel didn't argue at all how the evidence showed, or why the evidence showed Musbert was reckless, rather than knowing, or how the evidence supported, that he was not practically certain that his act, punching the victim, would result in the death of his family friend. That made it virtually impossible for the jury to even consider or find that he could have been guilty of involuntary manslaughter. If you look at it from the jury's perspective, they had been sitting at this trial for, there was five days between jury instructions, I mean, picking the jury and the verdict. They'd heard for five days he was charged with murder. The state didn't mention involuntary manslaughter ever in their closing argument. It was the first time that they even hear about involuntary manslaughter is this offhanded comment from defense counsel conceding that he's guilty of it. But counsel didn't then just take the opportunity to explain to them what this option is of involuntary manslaughter, and why it was the appropriate verdict. And that could only have left the jury confused. And counsel not arguing on behalf of the client why the jury should find this verdict effectively precluded the jury from finding him guilty of involuntary manslaughter. And then combined with that, he failed to make sure that the jury was instructed regarding causation as to involuntary manslaughter. And the jury had been specifically instructed that it did not need to find that Medford's actions were the sole and immediate cause of death, in order to find Medford guilty of murder. And that same statement of law is also true for involuntary manslaughter, but the jury was never told that. And a rational juror employing basic rules of logic would find that the omission of that statement or the omission of that rule of law for involuntary manslaughter to be meaningful. And the most logical and coherent interpretation of the instruction was legally incorrect. That in order to find Medford guilty of involuntary manslaughter, the state did have to prove that his acts were the sole and immediate cause of the victim's death. And here, that harmed Medford because that was a disputed issue at trial. The victim obviously did not immediately die. And then defense counsel argued in closing that someone or something else injured the victim after Medford punched him. And that it was that someone or something else that caused the victim's death. And so the jury heard that, and then they were directly told that that didn't matter for Medford to be guilty of murder. But they weren't told that it also didn't matter for him to be guilty of involuntary manslaughter. So logically, they inferred from the omission that the state did need to prove that Medford was the sole and immediate cause of the victim's death in order for them to find him guilty of involuntary manslaughter. Cumulatively, all three of these errors prejudice Medford. Murder requires proof, yet in a reasonable doubt, the defendant, in this case, was practically certain that his actions would cause grave bodily harm. And had defense counsel thought to keep out the other crime's evidence, had he argued why the evidence showed Medford was guilty of involuntary manslaughter, had he made sure that the jury was properly instructed regarding causation, under the factors explained in Devencenzo and Jones, the jury very well could have found that he was guilty of involuntary manslaughter and that he was not practically certain that his act of punching the victim would have caused the extent of the injuries that it did, meaning he wasn't practically certain that his punching him would cause grave bodily harm. This homicide involved a fist, not a gun, knife, or other weapon. And there was a size disparity between them. But the victim did get up and walk away after being hit. And he was alive, although gravely injured, he was alive, we know, six or seven hours later, talking to another occupant of the motel. And it's also clear from the videotape statement that Medford really had no idea of the extent of the harm that he had caused. He immediately admitted to the police that he had punched the victim. And he said he didn't understand how he had died, and he even asked the police what the cause of death was. So that could have supported an involuntary manslaughter verdict rather than a murder verdict, had counsel pursued that verdict in any way. And these errors combined served Medford to die. Medford is right to effective assistance to counsel and a fair trial, and we're asking members to either reduce his conviction from murder and involuntary manslaughter or reverse his convictions in a matter of criminal trial. We have no questions. Thank you. We'll hear from you on rebuttal. Ms. Sheppard? May it please the Court. Counsel? I would like to address Issue 1. As Your Honor pointed out, we don't have an issue as to what the jury found. Unlike in Griffin, there was no question from the jury about what does knowing mean. There was no question about instructing the jury. They were properly instructed. I would like to point out, we're talking about what the definition is that applies to knowing murder. I had said in my brief, we had argued that application of the conscious awareness, practical certainty definition of knowledge was not required by Illinois law. And I had looked up DiVincenzo and the murder statute, and of course they did not even contain that language, and didn't require application of that standard. And I did uncover Griffin, where we would like to acknowledge, as this Court said, the knowing element to be established in proving knowing murder clearly pertains to prohibited result rather than prohibited conduct. So that statement indicates that the knowing element to be established in proving knowing murder is, by definition, the conscious awareness practical certainty definition found in Paragraph 2 of the Statutory Definition of Knowledge and IPI 5.01b. It doesn't matter in this case. The jury found defendant guilty being instructed on all the elements of the offense, of murder, knowing murder, and also involuntary manslaughter. And there was overwhelming evidence that he acted knowingly rather than recklessly. The strongest evidence, of course, is Dr. Heumann's testimony. It was unrebutted. She described at least six blunt force traumas to the victim that indicated that he had been hit on the chin. His nose was dislocated. He had broken bones over different parts of his eyes. And what killed him was that he fell back on the sidewalk, or it was consistent with falling back on the sidewalk and suffering a skull fracture in the back of his head that eventually led to his bleeding, that resulted in bleeding that eventually led to his death. But there was quite a bit of evidence that we talked about in our brief that I don't need to go over here unless the court would like to hear more about it,  And as to the ineffective assistance claim, the state would like to say that in addition to the things that we argued in our brief, counsel argues, we note, not just that defense counsel was required to go into the differences in the mental states between knowing murder and involuntary manslaughter, but defendant also says that defense counsel should have specifically talked about the conscious awareness, practical certainty, knowledge definition. And of course, since the jury wasn't instructed on that, that would have led to jury confusion and would have perhaps itself led to a claim of ineffective assistance. The jury was properly instructed. There's no authority that's saying that defense counsel has to talk about what the elements were in all the instructions. It's well settled that what's argued in closing argument is a strategic decision, which this court is not in a position to second guess. So there's no ineffectiveness there. Defendant can't show that counsel's conduct was not strategic or that his performance was objectively unreasonable or that there was prejudice. The evidence was overwhelming that defendant had the mental state for murder and the jury is presumed to follow the instructions, which told them what the mental states were. As to IPI 7.15, the trial court, in giving a version of that instruction that stated it only applied to count one, knowing murder and not involuntary manslaughter, well, it actually only mentioned knowing murder. It said nothing about involuntary manslaughter. But in arguing on appeal, that instruction also applies to involuntary manslaughter. Defendant cites only the committee comments in the murder statute, and the trial court relied on those things to say that only including the language regarding knowing murder is consistent with the IPI. And the committee comments mention Section 9-3A, reckless homicide, and 9-3A, of course, defines both reckless homicide and involuntary manslaughter, but the committee comments do not state that section, or that IPI 7.15 is to be given when involuntary manslaughter is at issue. So the trial court was entirely correct in saying that instructing the jury pursuant to IPI 7.15 with the added language under count one was in conformity with the IPI, and defense counsel was entirely correct in agreeing with the trial court. So defendant can't establish that counsel's conduct was objectively unreasonable on that ground, and also he can't establish prejudice, not only because it would have made a difference in the result, but there's no reasonable probability that, given what the trial court said, the court would have given that instruction. The one that he asserts on appeal that the court should have given. As to the references in defendant's statement, we rely on what we argued in our brief. Patterson strongly supports the admission of those statements. They're very similar statements in that case, and we would emphasize again that the defendant talked about, I've done things like this before, I'm on probation for, I just got out of jail for this. So he only admitted in his statement that he struck the victim once, and he did make statements that indicated he robbed the victim. So when he's referring to this, he's referring to only those things. And they could, as Yaron pointed out, support his argument that he was only acting recklessly. And also some of the statements that he made, if your honors watched the recording of his statement, he made while he was crying. So the defense counsel could have made a strategic decision that this could have caused the jury to feel sympathy for him, or see that he was showing some remorse of some kind. So there was overwhelming evidence of guilt under any definition of knowing conduct. That definition is not even at issue in this case. Counsel was not ineffective. Unless the court has any questions, simply ask them. Rebuttal? Very briefly, regarding the other crimes evidence, if counsel had made some sort of strategic decision that the comments also indicated a mental state of recklessness, then he would have argued that in closing argument to support a verdict of involuntary manslaughter. He didn't do that. Regarding the jury instruction, the committee comments do cite to the correct statute, and the state hasn't disputed that the state does not need to prove that the sole and immediate cause of death is inaccurate as to involuntary manslaughter. It's a correct statement of law. And it applies to both of them. Well, your argument seems to be suggesting that the jury might have been inclined to convict him of involuntary manslaughter instead of murder, but they didn't understand this concept that any of his acts would be insufficient, and therefore they convicted him of murder instead. The problem is, I don't see how that argument can fly when defense counsel, I think for obvious tactical reasons, conceded in closing argument, hey, my guy's guilty of involuntary manslaughter. You would think that would remove any problem that the jury might have in thinking, gee, does this instruction fit the crime? I do see what you're, I understand what you're saying, but defense counsel went on to argue that someone else in between or something else in between caused the victim's death, and then the jury was directly instructed that that didn't matter for murder, and was never told that for involuntary manslaughter. So how does, so the jury's going to disregard the defense counsel's concession that his client was guilty of involuntary manslaughter? He said that, yeah, I think that the concession was confusing and didn't make any sense, because he's conceding that he agreed with the state, who never mentioned involuntary manslaughter. And that's the only time involuntary manslaughter was mentioned by defense counsel ever. So they had no... Well, what more, other than conceding that his client was guilty of it, what more did he have to say, stamp his foot? No, he needed to argue how the evidence in the case showed that he was guilty of that. Instead, they just hear this term involuntary manslaughter one time, and they're never explained what it means, how the evidence shows, or how the evidence would establish that. And that was Mufford's best chance at trial. And the fact that he did concede it shows that him not arguing how the evidence in the case showed that, shows that it wasn't strategic on his part to just concede without any further explanation. It leaves the jury... They have no context or understanding of what it even means, involuntary manslaughter. There's absolutely no chance they could have possibly convicted him of it if it wasn't explained to him. I see that my time is up, and I have made all my points. So thank you, Your Honors. Like I said, we're asking that you reduce his conviction to murder, I mean to involuntary manslaughter, or reverse his conviction to manslaughter trial. Thank you, counsel. We'll take the matter under advisement. We look forward to reading this in the next case.